NO. 07-12-0059-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

SEPTEMBER 7, 2012
_____

DANNY WILSON,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2010-426,462; HON. JOHN J. MCCLENDON III, PRESIDING
_____

*Memorandum Opinion*
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Danny Wilson (appellant) appeals his conviction for aggravated sexual assault. Through a single issue, he contends that the trial court erred by failing to charge the jury that the victim must not only have subjectively feared death or serious bodily injury but also that her fear was reasonable under the circumstances. We overrule the issue and affirm the judgment.

### *Background*[1]

The State indicted appellant for aggravated sexual assault via forcible sexual assault, plus the placing of the victim "in fear that death or serious bodily injury would be

[1]The following description of the evidence presented and circumstances arising at trial were taken in large measure from appellant's own brief.

imminently inflicted on" her. That the complainant was sexually assaulted when men invaded her house is not in question. The men numbered three. Furthermore, the occurrence happened around midnight.

At one point during the encounter the complainant activated her vehicle's alarm system, but the intruders became angry and yelled at her to turn it off. According to her testimony, the first intruder, identified at trial by her as appellant, "was 'angry and mean and intimidating' – he was wearing gloves, a bandana from the bridge of his nose to below his chin and something covering his head; after refusing to tell the complainant who he was, he told the complainant to disrobe and, when she had removed her outer clothes, ripped off her bra and underpants with significant force, causing her physical pain; told her more than once he was not going to rape her, but threw or pushed her onto the floor, 'punched her in her left cheek with a closed fist' and called her a bitch when she tried to kick him off her; and sexually assaulted her anally and vaginally while the second intruder held her down with his forearm." When she screamed, "the second attacker 'put his hand over her mouth and told her to keep quiet and to chill out' – she told him she 'wasn't able to breathe, and that's when he kind of let loose a little bit, but' his hand 'was still over my mouth.'" While the DNA evidence reflected that the second intruder had sexually assaulted her, "no DNA evidence existed to show the first attacker – said to be [] appellant – had done so." Later that night, the complainant's anus was found torn, and "a police officer observed that the complainant's left cheek was 'slightly swollen,' but saw no ligature or choke marks around her neck."

The second intruder wore pantyhose over his head; "he asked the complainant where her sister was – he evidently knew the sister's name – and when the complainant answered that her sister was not there, the first individual told her she had 'better not be

2

lying.'" When the first intruder had finished raping the complainant, "he pulled her 'by her ponytail over to the other side of the room' and into the bedroom, where the second intruder vaginally penetrated her and made her perform oral sex on him, telling her 'not to bite it or he' would hurt her, while the first attacker continued to pull her hair." The third individual, "she believed, 'was burglarizing the residence while all this was going on.'" "The first intruder then informed her that if she 'ever told anybody,' but 'he just left it open-ended,' without making any hand gestures, just before all the attackers ran out – she took his words to mean a threat on her life." The complainant also testified that during the attacks she was scared for her life. "She never felt she was not in danger – she worried that the intruders would seriously injure her." She gave no consent for the intercourse. "Nor, though, did she accuse the attackers of using ropes, tapes, handcuffs or other binding instruments."

Before the guilt/innocence charge was read to the jury, defense counsel submitted a proposed instruction on non-aggravated sexual assault as a lesser-included offense; this was denied, as had been his motion for directed verdict on the same general topic.

According to appellant's brief, "[t]he abstract portion of the charge recited the indictment, but then curiously stated that aggravated sexual assault is committed via penetration without consent 'if the person by acts or words occurring in the presence of the victim threatens to cause the death, serious bodily injury, or kidnapping of the person.'" Furthermore, according to appellant, "[t]he application paragraph stated merely that the jury would find the appellant guilty of aggravated sexual assault if it found penetration by physical force without consent, and that the appellant 'by acts or

3

words' placed the complainant 'in fear that death or serious bodily injury would be imminently inflicted on' her."

### Argument

According to appellant,

Where a defendant does not object to an erroneous jury charge, reversal requires the presence of egregious harm, which may be shown via the deprivation of a valuable right. Here the indictment charged the appellant with aggravated sexual assault, but the jury charge omitted part of the requirement of the aggravating factor, and thus permitted the return of a guilty verdict without the additional requirement that the complainant's subjective fear of imminent death or serious bodily injury have been reasonable in light of the appellant's supposed actions. Since the appellant was convicted of aggravated sexual assault without jury consideration of the aggravating factor's true requirements, he has been deprived of a valuable right, necessitating a new trial.

We disagree.

No one disputes that the standard of harm is one of egregiousness. That is, if we were to find that the trial court was obligated to instruct the jury that to convict 1) the victim feared death or substantial bodily injury while being raped by two individuals in the dead of night while a third burglarized her abode and 2) her fear must be reasonable, we could not reverse the judgment unless the omission caused egregious harm. This is so because appellant did not complain of the omission. *See Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008) (holding that the failure to instruct the jury on a required matter when no one requested the instruction may be reversed only when the omission caused egregious harm).

We assume, *arguendo*, that the jury was to be instructed as suggested by appellant. *See Grunsfeld v. State,* 813 S.W.3d 158, 162 (Tex. App.–Dallas 1991), *aff'd*, 843 S.W.2d 521 (Tex. Crim. App. 1992) (wherein the court stated that "[t]he jury is

4

mandated to assay first if that state of fear in fact existed; the defendant's conduct is then assessed to determine if it was the producing cause of such fear and whether the subjective state of fear was reasonable in light of such conduct"). Nevertheless, we conclude that the purported omission did not give rise to egregious harm.

No rational juror could have legitimately questioned that the victim's fear of death or serious bodily injury was reasonable. Three men invaded her home at night. One burglarized the abode while two raped her. She sounded an alarm, which resulted in her assailants becoming angry and yelling at her to deactivate it. They also struck her in the face, held her down, covered her mouth, and uttered threatening words during the event. Her anus was torn and face bruised. Nothing in the actions of her assailants tended to suggest that she was anything other than utterly subjected to their whims. A reasonable person could not have honestly concluded that the victim's subjective fear of death or serious bodily injury was other than reasonable.

There was no egregious harm here even if the trial court erred. So, the trial court's judgment is affirmed.

Brian Quinn<br>
Chief Justice

Do not publish.

5